P. L. L. C. Ms. Hubbard. Good morning. May it please the Court. This Summary Judgment Appeal raises a single issue, construction of the reporting requirement in the 2015 Claims Made and Reported Policy. Although it is undisputed that the insured, who I will refer to as Lonergan, in fact, disclosed the underlying claim against her to Landmark during the reporting period via a claim supplement, the District Court determined that the claim supplement, as a matter of law, could not constitute a report. That was error for three reasons. First, the plain language of the policy dictates the outcome in this case, but the District Court misread it. I'll get to that in a moment. Second, the District Court conflated the material reporting requirement with the policy's non-material notice provisions found elsewhere. For example, the District Court determined that a report is not a report unless there is a simultaneous submission of suit papers. That is not only unsupported by the policy language, it is, in fact, inconsistent with Texas' Notice Prejudice Scheme. And third, the District Court relied on a policy rationale derived entirely from out-of-jurisdiction authorities that have no application to this case and, in any event, cannot overcome the Texas principles of contract construction that govern. Because it's always best to start with the policy's language, and we believe it's crucial here, I'd like to start there. There are three principles of contract construction that we believe control this case. The first is that undefined terms are given their plain and ordinary meaning. Second is that courts may not insert requirements to which the parties do not actually agree. And the third is that ambiguities in insurance contracts are construed in the insured's favor and against the insurer here. Landmark. Your initial position is not that there's ambiguity, right? You're saying it's a straight-line read of the policy language. It's a bit more nuanced than that, Your Honor. We would say that the policy unambiguously requires a report to landmark, and to the extent that we know landmark is taking a contrary position as the District Court did, that, at best, can be read as an ambiguity that has to be construed in our favor. But our primary position is that the insuring requirement requires a report to landmark, and critically, it does not define the term report. There has never been a dispute in this case that the plain and ordinary of report means to convey or disseminate information. That is what the claim says. It was very odd and unusual to make a claim for a report, I mean, for coverage under an event that had been covered under the previous policy in an application for a new policy coverage. I would disagree with that a bit. I think that as— And it did not go to the claims department. So, I mean, I don't know how big the company is or whether the company was prejudiced, but it does look like that in any event, we would have to remand it to determine—well, I say in any event. I mean, if you win, then we have to remand it for determination of whether there's prejudice as a result of the nature of the report that they found. I do agree that there could be a prejudice analysis in this case. Of course, landmark did not move for summary judgment on prejudice, so that could remain a defense for them on remand. But the court did not even address that. Did not even address it. Did not get there. And we believe that was error based on some of the provisions that it relied on determining that a report is not a report. To answer your first question with respect to whether it's odd to report in this way, I would respectfully disagree with that because the policy—if the policy language was different, perhaps. But here, it set a report to landmark, and this court's decision in Lexington really determined the outcome of this issue, and it's consistent with Texas law. There, the insurer made a very similar argument that loss runs, which this court described as computer-generated spreadsheets with relatively scant information—I would submit less than what the claim supplement provided here—that that satisfied a written notice. And there, there was even a written requirement in the contract that we don't have here. But that satisfied, as a matter of law, a written notice of claim requirement. The court said, look, you drafted the contract. You included only a bare written notice of claim requirement. We're not going to apply into the contract a format to which the parties did not agree. And when you're putting yourself in the shoes of the insurer, and you have an application that says, have you been sued? You check yes, and then it says, please submit a claim supplement in loss runs. And she does so unambiguously. And then, in fact, it says, have you reported this claim to us? And she also checks yes. I don't think it's unreasonable for this to constitute a report in this context. Yeah, but that's another issue. I mean, whether it's unreasonable or not, I mean, would depend on a lot of factual circumstances, it seems to me. I don't know that that's a fact question. I can see that it could be a fact question in other circumstances. Prejudice would be, that's what I'm referring to. Prejudice, absolutely. Whether she satisfied the requirement that there be a submission of suit papers, whether she requested offense, those things, whether she did that at a time that did not prejudice them or did prejudice them, that would be a fact question that would be proper for remand. But whether this claim supplement constituted a report in the first instance, I do not believe is a fact question based on what we have before the court today. It was a report. You're right about that. I mean, it did go to the insurance company. It did not go to the claims department, apparently. But it did go to the insurance company. The notice seems to be minimal, but maybe adequate enough. There's no other language in the policy. I mean, given that this is a malpractice policy, there's no other language in there. It's typical when insurance policies are varying provisions, but there's no other language in here. Instructive, for example, because it's a duty on the insurer to notify as soon as you know immediately. Some other qualifying language. I take it there's none of that. So we're just looking at this sort of generic language about report. Is that it? It's interesting. There is the same as soon as practical requirement. It's couched in the potential claims context in Part 4 of the policy. We know that that's a non-material provision from Prodigy and from this court's decision in Lexington. There is also what the district court relied on in Part 4 of the policy is please send claim information to and gave two ways to do that. The district court relied on that and then it relied on a policy determination to what Judge Jolly is speaking to is do we require that ordinarily as a policy matter that it goes to a claims department? I'd like to address both of those. First, with respect to the contract, there is no contractual tie between Part 1, the insuring agreement that sets forth the covered services, and Part 4. This is very different from some of the out-of-jurisdiction cases that the district court relied on and that Landmark relies on today where those cases said, I want you to report in this specific way. We don't have that in this case. We don't even have the term report used in Part 4. When you read Part 4 in context, it actually makes a lot of sense. You have a provision that says you have to submit suit papers, summonses, demands, again, non-material information. Then it says, please send claim information and it gives these manners. That type of information is going to be in writing and it makes sense that it goes that way. Of course, the claims department would be the portion of the insurer that would need that information to interpose a defense. With respect to a report, it doesn't have to be in writing. An insured could pick up the phone and call and say, I'd like to report a claim. Landmark is telling you today that an insured could not do that. Under the policy they wrote, we believe that is an unreasonable position. To the extent there's an ambiguity, we believe it has to be construed in our favor. More than that, we've got an internal inconsistency in the contract even to the extent you're going to rely on Part 4. Part 4 gives two methods. It includes the attention claims department designation on which the district court so heavily relied, and yet the cover page gives three methods. The snail mail option does not include the attention claims department designation. On the policy point, I really want to cover that. I think it's important. In Prodigy, it was a claims made and reported policy, and the Texas Supreme Court focused on the bargained for benefit of the report in that context to determine whether the as soon as practical requirement was material or not. So what is the bargained for benefit of the report? Well, Prodigy tells us. Prodigy says that claims made and reported policies are less expensive than their occurrence-based counterparts for one reason. For one reason, insurers may close their books because they're able to ascertain their risk and set premiums on sounder actuarial footing. I believe Prodigy's exact language on page 380 of the opinion cited a case. Fairness in rate setting is the purpose of a requirement that notice of claim be given within the policy period. Who sets rates? It's the underwriters. It is ironic in this circumstance where the actual bargained for benefit of the report is so that the underwriters may set rates that we are in a case saying, as a policy matter, you have to submit this to the claims department. Now, we can see that there are some out-of-jurisdiction authorities that superficially stand for that proposition, but they do for a critical reason. They almost exclusively involve potential claims or incidents or occurrences that could give rise to claims. And courts have said, and in most of those cases, by the way, the insured also disavowed having awareness or knowledge of an incident that could give rise to a potential claim, so there was inconsistency in the renewal application itself. And the court said, you know what? We cannot divine from this inconsistent application you're putting before us, the insured cannot divine whether it actually has a risk, and then it's deprived of its benefit in setting rates. And so what it did was imply a claims department only rule to solve that. But that rule is not relevant here where we're talking about the unambiguous disclosure of a pending lawsuit. And that is what we have. And by the way, there has never been an argument that the claim supplement is unambiguous. In fact, at page 748 and 749 of the record, we have deposition testimony from Landmark representatives saying, yes, we were generally aware at that date that there had been a professional liability lawsuit lodged against the insured. So here, Landmark got its bargain for benefit, and it's now Lonergan's turn to get hers, and appellants are entitled to enforce that as a direct action under Texas law. I will reserve the remainder of my time. The April 16, 2016 date, that's the date in the supplement and the policy for May 8, 2016. That's the trigger date, right? There's no dispute that supplement referred to the lawsuit in question. There has been no dispute about that, no. And I believe the record proves that it was. Are there no more questions? You've saved time for a moment, Ms. Hubbard. Thank you, Your Honor. Mr. Harmon? Thank you. May it please the Court, I'm Rick Harmon. I represent Landmark American Insurance Company. First, just by way of the timeline, which is in our brief, to make this clear, the policy, there was a 30-day extended reporting period, which expired on June 9, 2016. Our position is that Ms. Lonergan did not report the claim until almost seven months after the policy period expired and the extended policy period expired. She didn't. She sent a letter on March 17, 2017 where she formally asked Landmark to she reported the claim and asked for coverage under the policy. So any argument to begin with that there's some kind of ambiguity is completely erased by the fact that Ms. Lonergan, who is a lawyer, could read the policy and figure out how she was supposed to make a claim because she did. She just did it seven months after the policy expired. It still comes down to prejudice, doesn't it? No, Your Honor, we don't believe so because of this reason. Our position is you don't have to show prejudice if the insuring agreement is not triggered and that's our position and that's really what the judge said because there's two things in a claims made and reported policy that are critical. First, the claim has to be made against the insured in the policy period and then second, the claim has to be reported to the insurer within the policy period or the extended reporting period. Isn't there a difference between reporting the claim I mean reporting it and making a claim? They say the report language means report it and in the supplement filed in April for the new policy, it was quote reported and we're all fond of that. Now then when I make a claim as insured for you to provide defense to me, yada yada, then the claim is well that's a whole other set of language and they can't dispute the March 2017 language when the claim was made but aren't we back at this business about the policies when you quote report it. I'm reporting it but I'm not making a claim that you defended. I understand that and I guess that goes to one of the principles that runs throughout the cases that discuss this and it's really the basis, I mean it's the signature mark of a claims made and reported policy is that it's a bargain for coverage that is only it's limited to the time period that the policy exists. So in other words, the claim has to be made and reported within the policy period. So if you were to adopt the argument of the appellants here you would essentially let the policy go much longer than the policy period because here's what happens. Just like they're arguing here. The insurer can put some fairly vague and ambiguous information about a potential claim in a renewal application. Banking on the fact that well maybe the carrier won't raise my premium or cancel the policy or do anything based on me providing some information. That's exactly what happened here. If you read what Ms. Lonergan actually put in the supplemental or in the claim supplement, she said that there was a lawsuit but that the borrower was getting the money to settle the case and that it was going to be resolved with a release and no liability. Okay? She reports it but in terms of just that basic information but she sends that first to the underwriting department and then she waits until nine months after the policy expires to say wait a minute, I want it to finish. That question goes to prejudice more than it does to the technicalities of notice. I disagree simply because I don't think that was reporting the claim by simply providing some basic information. Did they get the notice? That's the question. Did they know whenever they received that in the claims department? The underwriting department knew. I have reasonable notice of it. I mean, you know, you go back and you say well obviously not and the underwriting department has no communications whatsoever with the claims department. We didn't know it. Whatever you may come up with or you did know it. I think they acknowledged here though that you did know of the claim. They were aware of the claim but the insured had not requested a defense which under the Supreme Court case Crocker the insured has to request Is that enough to give you notice? Because your honor, if that's the law and by the way, there's not a single reported case anywhere in the United States that we've been able to find where any court has said providing information in an insurance application is sufficient for reporting purposes for a claims made and reported policy. They distinguish. In other words, why doesn't that depend on the circumstances? I mean, why isn't that fair to everybody? You got the notice their claim was filed I mean everybody goes I think for this reason the bargain for coverage is supposed to be for the time period where the policy exists If what they say is true, then like I said an insured can provide some very generic information and then wait until after the suit's filed and then the insured can determine this is going to get bad. It's going to blow through my deductible. So I better ask for a defense now. You can avoid all that in just the way the documents are written. It's a malpractice. All kind of language can be put in there to prevent a lot of what you're saying. We're just dealing with this policy and what it says. Your side doesn't dispute that on April 16th when the supplement was filed you know, she checked in. If she said no there's nothing pending and moves on down the road and later makes this claim. There's no doubt your company would not only not reassure her but all of the above under the exclusion she didn't report it. You didn't tell us until now and it's too late. So she checks. Yes, there is a claim. There is a lawsuit and it's in there and there's no language taken in the policies that says reporting shall not equal anything other than whatever. So I mean we're construing it's intuitive to me you report it as soon as you know about it. But that's not this deal. What is it required to report? Their argument is they would put on notice on April 16th your brief and nobody says that this doesn't refer to the lawsuit in question so report. Different than when she made a claim to be defended and to pay the judgment. I understand that position but What's your best case that their construction of quote reporting Well because as the district court said the district court judge said look you have to and this is Texas law that you can't just look at one provision in a vacuum without looking at the entire policy and there's many cases that say that. So you have to look at the what does report mean in conjunction with the notice provision of the policy and the notice provision of the policy says you need to provide this information to RSUI and here's the address that you send it to at the claims department. You don't just look at the word report in a vacuum and in fact we know that Ms. Lonergan knew what to do because when she finally did decide to report the claim she sent it to the claim department and asked for coverage. There's also the suggestion I mean that you could have used mandatory language as opposed to courtesy language Well please do this or please do that instead of you shall do this or you shall not do that The other thing that occurs to me is there's nothing that keeps you from taking the position that you're taking here now if you wrote your policy accordingly And we believe we did. We believe the policy I mean you could you could put all of that in terms of the mandatory reporting these are the requirements for reporting otherwise the claim will not be honored. Something that is emphatic and makes clear to the insurer that that you mean what you're saying and it's not just give me a call or let me know later Well again your honor I think that when you look at what the word report in conjunction with the notice of claim provision you can't just look at the one word you have to look at the whole thing when you say report you have to figure out where you report it to instead of impose those obligations on the insurer I mean the insurer is the one that's writing the contract he can make any kind of terms notice required in that policy and then the on the other hand the insurer picks it up and it does not have any clear emphatic language about what he or she must do to file a proper claim Well Ms. Lonergan did know what to do because when she finally asked for defense she knew where to send it She was pretty sloppy The thing is is that if an underwriting department if information in an insurance application can serve as reporting of a claim then underwriting and claims are two separate parts of an insurance company and like the cases that were cited in our brief and like the district court said if you provide information to an underwriting department the reason you're providing that information and that's requested in the application is because the underwriting department is trying to figure out okay what's the exposure here to the insurer should we raise premium should we renew the account should we not renew the account the function of that information is just for risk evaluation it's not to say hey I need you to come in and investigate my claim and defend me Go back to the district court and say I was prejudiced and this is how I was prejudiced and resolve that issue I think that's not proper reporting if you send it to the underwriting department it was not proper I agree with that but if it's not proper then they can't meet the terms of the insuring agreement that's our position that if they didn't report it properly they can't meet the provisions of the insuring agreement it was notice not proper notice I mean really I agree with that to file a claim in an insurance application is not proper notice I mean I agree but it is notice our position is it's not in compliance with the policy unless you go through the all the details of the policy and read the policy like you read it but the insurer may not read the policy like you read it so I mean it's and the insurer could read the policy put it in plain clear unmistakable emphatic language well our position is that report has to be considered with all the rest of the policy language and again it's not a privilege argument and it's a slippery slope because if the underwriting department now is going to function as the claims department then the underwriting department I guess has to sift through all these claims and make the decision about whether or not it would not be that way if you rewrite your contract we don't nobody pledged that the contract was ambiguous to start with and we don't think it is put some sand and grit on that slippery slope by reworking your contract well again we think the contract is clear the district court judge agreed that it was clear that you have to read all the terms together and that they did not report the claim properly that she did not report the claim if Ms. Lonergan wanted a defense she knew how to get a defense in fact she asked for one it was just after the policy expired she would have been making a claim as opposed to reporting it and we know in reality that underwriting does talk to claims I mean you know the whole point when you check it off your insurance company does find out I mean that's how they renew you raise the premiums etc. so I mean that part's kind of a non-starter I mean it's two different aspects but most assuredly underwriting finds out about claims because that's how they determine the rates where they renew you but the question here is I mean not so much the wisdom of all this but what does this language say reporting isn't defined in the contract is it? the word report is not defined that's correct but there is not a decision in the United States like I said where a court has said reporting to an underwriting department is sufficient for reporting purposes under a claims made and reported policy that's not the question for the court is it? I mean the question for the court is what does report mean in this particular instance well and again we believe the district court got that right by looking at all the policy terms and provisions not just the word report in a vacuum tell us what you do with the Prodigy case I know that you did cover that in your brief but tell us again how you deal with that decision our position is Prodigy is not it's just not an issue here because if they don't if Lonergan did not meet the terms of the insuring agreement and we don't believe that she did then no disclaims issues and prejudice are not an issue I was one of the lawyers in Prodigy the insured actually did report the claim in the policy period it was just late and that was the argument that we made was that by reporting it late that that it was not as soon as practical therefore there was no coverage but the claim was reported in the policy period we won on that at the district court level but ultimately we lost at the supreme court where the court said that it wasn't a material breach but I don't think Prodigy applies here for that reason one other thing on the Lexington vs. East Texas medical case that they rely on heavily again a different scenario kind of like Prodigy there was no that was a claims made policy only it was not a claims made and reported policy and the issue was whether written notice whether a loss run could serve as written notice there was no issue about whether the insured actually complied with the insuring agreement of the policy and that's what our position is and that's what the district court said they didn't meet the requirements of the insuring agreement because the claim wasn't properly reported so East Texas medical it has no application here because it was a case in which it was a notice issue we don't believe this is a notice issue we believe this is actually the issues here are whether the insured reported the claim and triggered the insuring agreement of the policy and we don't believe she did the other thing that I wanted to bring up was just the fact that under Crocker if so if they're correct and the claim was reported and the claim was made in the policy period then the insuring agreement would be triggered for purposes of the duty to defend because the insuring agreement is met but the insured didn't ask for a defense until a long time later well under Crocker the insured has to ask for a defense so if you're saying that by reporting the claim you triggered the insuring agreement well then we would a landmark would owe a defense from that day forward from the date she submitted the information in the application despite the fact that she didn't ask for a defense I don't know how those two positions can be justified because Crocker says the insured has to ask for a defense in order to trigger the duty to defend again I just the cases that are out there are all favorable to our position while they may not all be on point they are all favorable to our position there's not a case out there that is favorable to their position if there was they would cite it but there's not a single case is there any case that you are citing that involves the simple word report without further definition I don't believe I don't recall your honor there being any cases where it just says report but I do know that a lot of the cases just like the district court judge did look beyond just what's in the insuring agreement and say well this is what they have to do in order to properly report here's what the notice claims provision says in terms of where to send the information and what to include and many of the cases that we cite include that requirement that you go beyond just what's in the report you have to actually look at what the policy says in terms of how to report it and where to report it would you agree that your policy language would be stronger if you said the insured shall do this and it shall do that as opposed to please send this information to us the semantics please I guess it's a cordial way to say it I still think it means you're supposed to comply with the policy if I was the insured and it said please I would say well that's nice of them to say that but I still need to comply with the policy provision so I think that I really don't think that matters that they didn't say shall instead of please I believe that's all I have again I do believe that this report got it right thank you so tell us about this distinction between the claims made and reported policy and whether that makes a difference or why in your view it shouldn't make a difference claims made and reported policy there's no one disputing that the claim has to be first made during the policy period and it must be reported during the reporting period our point here is that that occurred based on the undisputed facts of this case because the claim supplement reported the claim to landmark I believe the district court's own words were that it contained a concise synopsis of the underlying dispute sufficient to apprise landmark of its subject matter in progress and we know in fact from the record that landmark has said yes we were aware that she had been sued as a result as a result I don't think that while there does have to be a report we believe that that requirement was satisfied here and we believe the purpose of the report is so that the underwriters could in fact set premiums and we know based on the record that the landmark underwriters did in fact increase the premium based on this report would it have made any difference in this case if he had used mandatory language with respect to the information that was required to accompany the claim? It would have helped absolutely would it have made any legal difference would it have cured the defect of just simply saying report the claim and then pre furnish us this information? Your honor I believe that if the contract tied part one to part four and otherwise didn't include internal inconsistencies then I believe that that could help. I do think there would be an interesting question under Texas law of whether that would still be material specifically the attention claims department portion because the material part of the report the bargain for benefit is so that the underwriters have it. And you're not contesting that if they wanted to write the policy to say these are the requirements for a policy to be acknowledged and paid and processed that you shall give a report that will detail this, this, this and this. You shall furnish this information and otherwise your claim will not be honored. I mean a policy can say that Yes I believe I believe that parties can write their contracts clearly and if they had done so again this is no model of clarity in a I believe that parties could and should contractually be able to say this is how I want you to report and this is a material part of the bargain. I believe that they could say that of course that did not occur here. I'd like to turn back to the claim supplement. I heard opposing counsel discuss it as generic. In fact I believe it included more data than what was submitted in the Lexington decision. Then there was a reference to the 2017 letter from Lonergan that I'm not sure if I'm hearing an estoppel argument based on that to the extent there is the fact is that there had been several communications from Landmark to multiple of the parties in the case saying we're not going to provide coverage because you didn't comply with the notice provisions in part 4. So it's not all that surprising that she then requested her defense in the way that they said here's what you have to do. But we know under the Texas Supreme Court's decision in Crocker and then the Houston Court of Appeals decision in Hudson that the request for defense has to happen. No doubt about that. It does not have to happen during the reporting period and we know that. You can actually go to the Hudson decision at 727 it said and the issue there was the insured had never requested a defense it had never submitted suit papers and the court said here we must determine whether the city who was the effective insurer in that case proved prejudice as a matter of law and of course the court held that it had because that request never came and Hudson really was a claims made and reported decision because the ordinance said provide notice to us as soon as practicable but no later than five days after the accident. So that decision tells you what Texas law requires. That is a prejudice inquiry. With respect to the out of jurisdiction authorities and whether there's a reported case in our favor There are. I've got the sites if you'd like them. He's correct that we did not cite them. The reason for that is we just don't think any of these are relevant. They all involve potential claims they involve different policy language and we believe that Texas principles of contract construction give you the result that you need for the question that's before the court today. I hear final point I make is I'll hear opposing counsel to say that perhaps these have to be cured during the reporting period I'm going to read the non-material provisions if I may finish This court said in Lexington although it wasn't a claims made and reported policy it did reference it and it said as long as notice of the underlying claim had been given coverage would exist under a claims made and reported policy once a claim has been timely reported the insurer is unable to close its books and that was notwithstanding that for instance the notice of suit papers provision had not been strictly complied with. Thank you. Your case and all of today's cases are under submission and the court is in recess until 9 o'clock tomorrow.